UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAMON HALMOND JR.,

                Petitioner,                      **DECISION AND ORDER**

    -vs-                                 **No. 09-CV-1057(MAT)**

JOHN B. LEMPKE,

                Respondent.

## I.   Introduction

Pro se petitioner, Damon Halmond, Jr. ("Halmond" or "Petitioner"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on the basis that his convictions for first degree rape and second degree rape were unconstitutionally obtained. Petitioner argues that his Sixth Amendment right to cross-examine the victim was improperly curtailed and that he was erroneously sentenced as a persistent violent felony offender. Respondent argues that the Petition is untimely. Respondent further argues that the Sixth Amendment claim is procedurally defaulted and, in any event, without merit. Respondent argues that the sentencing claim likewise is without merit.

For the reasons set forth below, the Court finds that the Petition is, in fact, timely. However, the Court agrees with Respondent's arguments concerning procedural default and the lack of merits of Petitioner's claims. Accordingly, the Petition is dismissed.

## II. Discussion

### A. Timeliness

With limited exceptions, a prisoner seeking a writ of habeas corpus must submit his petition no more than one year after the judgment against him becomes final. See 28 U.S.C. § 2244(d)(1)(A)-(D). The statute also provides for tolling of the limitations period during the pendency of a "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ." 28 U.S.C. § 2244(d)(2).

For the purpose of deciding whether the Petition is timely, the Court must determine when the one-year period began running. In Halmond's case, this requires a decision as to when the "judgment became final by the conclusion of direct review or the expiration of time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Petitioner was convicted and sentenced on November 19, 2002. On June 6, 2008, Petitioner's conviction was unanimously affirmed on direct appeal by the New York State Supreme Court, Appellate Division, Fourth Department. The New York State Court of Appeals denied leave to appeal on August 19, 2008. Adding to that a 90-day period during which he could have petitioned for certiorari in the United States Supreme Court, Petitioner's conviction became final on November 17, 2008. See Clay v. United States, 537 U.S. 522, 525 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the

appellate court's affirmation of the conviction."); SUP. CT. R. 13(1) (setting 90-day limit for filing of petition of writ of <u>certiorari</u>). Thus, the one-year statute of limitations commenced on November 17, 2008, and Halmond had until November 17, 2009, to file his Section 2254 Petition in this Court.

Respondent argues that the Petition was filed on the date that it was received by the Court, which was December 14, 2009. This argument ignores the well-settled "prisoner mailbox rule". In <u>Houston v. Lack</u>, the United States Supreme Court held that a <u>pro</u> <u>se</u> habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk.  487 U.S. 166, 276 (1988). The rule is premised on the fact that a <u>pro</u> <u>se</u> prisoner's mail must go through the conduit of prison authorities whom he cannot control and whose interests might be adverse to his. <u>See</u> <u>Houston</u>, 487 U.S. at 271.

"Where it is unclear when a <u>pro</u> <u>se</u> state prisoner mailed his or her habeas petition, the court assumes that the petition is filed on the day it is signed and dated." <u>Porter v. Greiner</u>, No. 00-6047, 2005 WL 3344828, at *7 (E.D.N.Y. Nov.18, 2005)(citing <u>Adeline v. Stinson</u>, 206 F.3d 249, 251 n.1 (2d Cir. 2000) ("[W]e treat the petitioner's petition as having been given to prison officials for filing, and therefore having been filed, on the date that appears on his petition, July 16, 1997.")).   The Court

construes the date Petitioner signed the Petition (November 12, 2009) as the effective filing date. The Petition accordingly is timely.

**B.    Merits of the Petition**

   **1.    Improper Limitation of Cross-Examination**

Petitioner claims the trial court erred by not allowing him to cross-examine the victim about (1) prior accusations of rape which she made and which involved different perpetrators and (2) purported admissions of prostitution. Respondent argues that Petitioner's claim is both procedurally defaulted and without merit.

Prior to the commencement of jury selection, Petitioner's attorney advised the court that the victim had made two prior rape allegations involving different men. Counsel believed the victim's prior allegations to be false. Trial counsel also requested permission to cross-examine the victim about whether she accepted cash in exchange for sex in order to support herself on the streets. See N.Y. Crim. Proc. Law § 60.15 (2),(5).

The trial court initially denied permission to cross-examine the victim about prior claims of rape based on Petitioner's failure to demonstrate that the prior allegations may have been false. The trial court later reversed its ruling, finding the victim had opened the door to being questioned about her past accusations of rape.

Petitioner's request to cross-examine the victim about prior acts of prostitution was based on an ambulance report which noted as follows: "Patient has admitted to sister Tasha that she's accepted dollars for sex in the past to support herself on the streets." Counsel argued that he was entitled to more expansive cross-examination because it was necessary to the theory of the defense–i.e., Petitioner and the victim entered into an agreement to exchange sex for drugs and alcohol, and when Petitioner did not fulfill his end of the agreement, the victim cried rape. The trial court ruled the victim could be asked whether she entered into such an agreement with Petitioner, but could not be questioned about whether she had prostituted herself in the past.

In his direct appeal to the Appellate Division, Fourth Department, Petitioner claimed he should have been permitted to confront the victim on cross-examination concerning the prior, possibly false rape claims and the admission to prostitution in order to impeach her credibility. The Fourth Department disagreed, finding that Petitioner failed to demonstrate  that the prior complaints may have been false or that they were suggestive of a pattern casting doubt on the validity of the instant charges.  As to the alleged past acts of prostitution, the Fourth Department concluded that the Rape Shield Law, C.P.L. § 60.42, allowed for cross-examination regarding only convictions of prostitution–not acts of prostitution.

Leave to appeal was not sought on the claim that the trial court unduly restricted the cross-examination of the victim. As a result of this omission, Respondent argues, the claim is unexhausted.

In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005). Claims are "fairly presented" to the New York Court of Appeals when the application for leave to appeal either clearly states that all claims in the attached brief are being pressed, or, alternatively, makes no arguments in detail but simply requests review of all issues outlined in the brief. Jordan v. Lefevre, 206 F.3d 196, 199 (2d Cir. 2000). Where, as here, the application for leave to appeal refers to specific claims raised before the Appellate Division but omits mention of other claims, the Second Circuit has deemed the unmentioned claims to have been abandoned and not "fairly presented" to the highest appellate court. Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).

A federal claim that is procedurally defaulted by state law "meets the technical requirements for exhaustion" because "there are no state remedies any longer 'available' to [the habeas petitioner]." Coleman v. Thompson, 501 U.S. 722, 732 (1991);

-6-

accord, e.g., Grey, 933 F.2d at 120.  Under former New York Court of Appeals Rule 500.10(a),  New York "permit[ted] only one application for direct review[.]" Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000) (quoting N.Y. Ct. App. R. 500.10(a) (1999)).  The rule has since been amended, and criminal leave applications are now addressed in N.Y. Court of Appeals Rule 500.20. Colon v. Connell, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n.4 (S.D.N.Y. July 9, 2009). Although this section does not specifically state that there may be only one application for appeal, see N.Y. Ct. App. R. § 500.20, "such a restriction may be inferred." Colon, 2009 WL 2002036, at *6 n.4.

First, N.Y. Court of Appeals Rule 500.20(d) and C.P.L. § 460.10(5) provide a 30-day window for any such application to be filed, and "this time limit would be meaningless were multiple applications permitted." Colon, 2009 WL 2002036, at *6 n.4. Second,  N.Y. Court of Appeals Rule 500.20(d) provides that a request for reargument or reconsideration of an appeal may not raise any new points, implying that a wholly new request for leave to appeal would be impermissible. Colon, 2009 WL 2002036, at *6 n.4 (citing Roa v. Portuondo, No. 02 Civ. 6116, 2007 U.S. Dist. LEXIS 74387, at *32-33 (S.D.N.Y. Oct. 5, 2007) (declining to review issue that petitioner had failed to raise on direct appeal); Murray v. Williams, No. 05 Civ. 9438, 2007 WL 430419, at *8 (S.D.N.Y. Feb.8,

2007) (same); <u>Oquendo v. Senkowski</u>, 452 F. Supp.2d 359, 368 (S.D.N.Y. 2006) (same)); <u>see also</u> <u>Harden v. LaClaire</u>, No. 07 Civ. 4592(LTS)(JCF), 2008 WL 783538, at \*14 & n.12 (S.D.N.Y. Mar. 26, 2008) (same), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, <u>Harden v. LaClaire</u>, 07CIV4592LTSJCF, 2008 WL 4735231 (S.D.N.Y. Oct. 27, 2008).

Were Halmond to seek collateral review in state court of the Sixth Amendment claim by means of a C.P.L. § 440.10 motion to vacate the judgment, the motion court would be mandated to deny the claim pursuant to C.P.L. § 440.10(2)(c) (mandating dismissal of claim if it could have been raised on direct review but was not). <u>See</u> <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997) ("Section 440.10(2)(c) of New York's Criminal Procedure Law mandates that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record."). Where, as here, the alleged evidentiary error is "particularly well-established in the trial record," <u>Sweet v. Bennett</u>, 353 F.3d 135, 140 (2d Cir. 2003), the error is subject to mandatory dismissal under C.P.L. § 440.10(2)(c).

"For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" <u>Grey</u>, 933 F.2d at 120 (quoting <u>Harris v. Reed</u>, 489 U.S.

255, 263 n. 9(1989); other citations omitted).  Such is the case here-Halmond's claim that his cross-examination rights were erroneously restricted should be deemed exhausted.  However, the same procedural bar that results in the "constructive exhaustion" of the claims also creates a procedural default and will prevent this Court from reaching the merits of the claims, e.g., Grey v. Hoke, 933 F.2d at 120-21, unless Halmond can "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice,'" i.e., a showing of "actual innocence." Harris v. Reed, 489 U.S. at 262.

Halmond has not attempted to make any showing to excuse the procedural default. Indeed, the Court finds no basis on this record to find cause and prejudice, or that a fundamental miscarriage of justice will occur should the Court decline to hear the claim. Accordingly, it is dismissed as procedurally barred.

## 2. Erroneous Sentencing as a Persistent Violent Felony Offender

A hearing was held on October 3, 2002, and November 1, 2002, to determine Halmond's recidivist status. When he refused to come to court for sentencing on November 19, 2002, he was sentenced, in absentia, as a persistent violent felony offender to an aggregate indeterminate term of imprisonment of twenty-five years to life.

Petitioner claims the trial court erred in sentencing him as a persistent violent felony offender because his 1989 conviction for second degree burglary allegedly was obtained in violation of his constitutional right to the effective assistance of counsel. Specifically, he argues the attorney who represented him in 1989 (now Rochester City Court Judge Melchor Castro) had a conflict of interest since he was the same attorney who prosecuted him for burglary in 1979. According to Petitioner, Judge Castro, as his attorney in 1989, never advised him that he had a right to challenge the constitutionality of his 1979 burglary conviction and never identified himself as the prosecutor who had handled the 1979 burglary proceeding.

The Fourth Department summarily rejected this claim on the merits. This ruling was neither contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

The standard governing an ineffective assistance of counsel claim based on an asserted conflict of interest was articulated by the Supreme Court in Cuyler v. Sullivan, 446 U.S. 335 (1980), and differs from the more general ineffective assistance standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See, e.g., United States v. White, 174 F.3d 290, 294-95 (2d Cir. 1999). As to the defective performance prong, where, as here, a petitioner "raised no objection at trial" regarding the alleged conflict,

-10-

Cuyler v. Sullivan, 446 U.S. at 348-49, his Sixth Amendment claim
cannot prevail unless he demonstrates "that counsel actively
represented conflicting interests and that an actual conflict of
interest adversely affected his lawyer's performance," Burger v.
Kemp, 483 U.S. 776, 783 (1987) (citations & internal quotations
omitted); accord, e.g., Mickens v. Taylor, 535 U.S. 162, 122 S.Ct.
1237, 1242 (2002) (stating that "absent objection, a defendant must
demonstrate that 'a conflict of interest actually affected the
adequacy of his representation'") (quoting Sullivan, 446 U.S. at
348-49).

"The burden of proof rest[s] on [petitioner] to show a
conflict of interest by a preponderance of the evidence." Triana v.
United States, 205 F.3d 36, 40 (2d Cir.) (28 U.S.C. § 2255
proceeding), cert. denied, 531 U.S. 956 (2000). "[T]he burden of
proof cannot be met by speculative assertions of bias or
prejudice." Id. at 41.

Here, there was no conflict stemming from the fact that
Petitioner's defense attorney in 1989 was the same attorney who
prosecuted him in 1979. The concerns about the use of privileged
information that arise when a defense attorney joins the district
attorney's office do not arise when a prosecutor becomes a defense
attorney. People v. Sawyer, 83 A.D.2d 205, 208 (App. Div. 4th Dept.
1981) ("[T]he transfer of a Public Defender to the District
Attorney's office creates a conflict of interest which constitutes

a per se disqualification of the entire District Attorney's staff from prosecuting a defendant who has been previously represented by the former Public Defender. . . . [T]he converse situation . . . creates no appearance of impropriety or opportunity for abuse of confidence. The danger that previously obtained confidential information will become available to the prosecution simply does not exist when a District Attorney becomes a Public Defender."). Thus, when counsel represented Halmond in 1989, after having prosecuted him ten years earlier, he was not, and never had been in, a position to use privileged information against him which was acquired from his previous representation of Halmond ten years earlier.

Because Halmond cannot demonstrate that his attorney in 1989 "actively represented conflicting interests" he cannot fulfill a necessary prong of the <u>Mickens</u>/<u>Sullivan</u> test.  Accordingly, he cannot show that the predicate felony used to enhance his sentence was infirm due to a conflict of interest. Thus, his habeas attack on his sentencing as a persistent violent felony offender must fail.

### III. Conclusion

For the reasons stated above, Damon Halmond, Jr.'s Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right,

the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal <u>in forma pauperis</u>.

       **SO ORDERED**.

                                     S/Michael A. Telesca

                                  _____
                             _____ _____
                                  MICHAEL A. TELESCA
                          United States District Judge

DATED:      June 20, 2011
             Rochester, New York